IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 06-cv-02271-REB-CBS

INFORMATION NETWORK FOR RESPONSIBLE MINING ("INFORM"), and
COLORADO ENVIRONMENTAL COALITION ("CEC"),

    Plaintiffs

v.

DEPARTMENT OF ENERGY,

    Defendant.

---

# AMENDED ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT[1]

**Blackburn, J.**

    The matters before me are (1) **Plaintiffs' Motion and Brief in Support of Summary Judgment on All Claims Under the Freedom of Information Act (Oral Argument Requested)** [#42], filed August 22, 2007; (2) **Defendant's Motion for Summary Judgment on Plaintiffs' Claims** [#45], filed September 18, 2007; and (3) **Plaintiffs' Motion To Take Judicial Notice of Defendant's January 2008 Uranium Leases Audit Report** [#61], filed February 12, 2008. I find that oral argument would not materially assist me in the resolution of the matters inherent to these motions, and, therefore, decline plaintiffs' request for oral argument. Substantively, I deny plaintiffs' motion for summary judgment, grant defendant's motion, and deny the motion to take

---

[1] This order is amended in accordance with my **Order Granting Defendant's Motion Pursuant to Fed.R.Civ.P. 59(e)** [#67], filed April 30, 2008.

judicial notice of defendant's audit report.²

## I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  **FED.R.CIV.P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  **See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by

---

² The report clearly has no relevance to the issues inherent to the present motions.

tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Concrete Works***, 36 F.3d at 1518.³ All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999); ***Nutting v. RAM Southwest, Inc.***, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III.  ANALYSIS

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* On July 13, 2006, plaintiffs requested, pursuant to FOIA, "all agency records of the Department of Energy ("DOE") that were created or obtained after January 1, 1995 regarding the leases under consideration in the recently released **Uranium Leasing Program Draft Programmatic Environmental Assessment** . . . ."⁴ Under the express

---

³ Although cases implicating the Freedom of Information Act often are resolved on cross-motions for summary judgment, ***see Wickwire Gavin, P.C. v. United States Postal Service***, 356 F.3d 588, 591 (4th Cir. 2004), the mere fact that the parties have filed cross-motions for summary judgment does not necessarily indicate that summary judgment is proper, ***see Atlantic Richfield Co. v. Farm Credit Bank of Wichita***, 226 F.3d 1138, 1148 (10th Cir. 2000); ***James Barlow Family Ltd. Partnership v. David M. Munson, Inc.***, 132 F.3d 1316, 1319 (10th Cir. 1997); ***see also Buell Cabinet Co. v. Sudduth***, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

⁴ The Uranium Leasing Program is described in the declaration of Sheila G. Dillard, offered in support of defendant's motion for summary judgment:

> The United States of America holds title to certain uranium mining property and desired that the property be developed and operated for the production of uranium bearing ores. Under the Uranium Leasing Program, government owned lands in Western Colorado were leased to uranium mining companies ("Operators") through a competitive bidding

provisions of FOIA, defendant had twenty working days in which to respond to this request. 5 U.S.C. § 552(a)(6)(A)(i). Defendant acknowledges that it failed to respond to plaintiffs' request within this time frame. Nor did it provide plaintiffs with the written notice of "unusual circumstances" that would permit an extension of the deadline for an additional ten working days. *See id.*, § 552(a)(6)(B)(i). This lawsuit followed.

After suit was filed, defendant filed a request pursuant to ***Open America v. Watergate Special Prosecution Force***, 547 F.2d 605 (D.C. Cir. 1976), arguing that "exceptional circumstances" prevented it from complying with the statutory deadline and asking the court to stay these proceedings until it had completed processing plaintiffs' FOIA request. (***See* Defendant's Motion for an "Open America" Stay** [#17], filed February 5, 2007.) A second such motion was filed seeking a further extension of the deadline. (***See* Defendant's Second Amended Motion for an "Open America" Stay** [#32], filed June 6, 2007.) Before the court had an opportunity to rule on the matters inherent to those motions, defendant released its final administrative response, totaling some 7,100 pages of putatively responsive documents. (***See* Defendant's Status Report** [#35], filed June 22, 2007.) Some 807 documents were partially or completely withheld under exemptions 4 and 5 of FOIA, 5 U.S.C. § 552(b)(4) & (5). Plaintiffs maintain that the response is inadequate and that the documents withheld have not

---

> process and pursuant to written Leases, with the DOE as the Lessor of each parcel and the Operator as the Lessee. Per the terms of the Lease, the Operator was granted the right to explore for, develop, mine and remove deposits of uranium, vanadium and associated minerals, and required to pay royalties to DOE. DOE managed the Uranium Leasing Program by, among other things, reviewing and approving Exploration and Mining Plans, inspecting mining operations and approving clean-up and relinquishment back to DOE of the leased property.

(Second Declaration of Sheila G. Dillard and *Vaughn* Index ¶ 10 at 4 [#47], filed September 18, 2007.)

been shown to be exempt under FOIA.

## A. TIMELINESS CLAIM

Plaintiffs' first cause of action in this matter challenges the timeliness of defendant's response to the July 13, 2006, FOIA request. As noted above, defendant does not dispute that it failed to respond to plaintiffs' FOIA request within the statutory deadline.[5] Now that defendant has proffered its final administrative response to the request and has produced documents it believes to be fully responsive, however, plaintiffs' timeliness claim is moot. "The only question for summary judgment is whether the agency finally conducted a reasonable search, and whether its withholdings are justified. When exactly a reasonable search was conducted is irrelevant." ***Hornbostel v. U.S. Dept. of Interior***, 305 F.Supp.2d 21, 28 (D.D.C. 2003), ***aff'd***, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004) (citation and internal quotation marks omitted). ***See also Tijerina v. Walters***, 821 F.2d 789, 799 (D.C. Cir. 1987) ("'[H]owever fitful or delayed the release of information under the FOIA may be . . . if we are convinced appellees have, however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA.'") (quoting ***Perry v. Block***, 684 F.2d 121, 125 (D.C. Cir. 1982)).

The cases to which plaintiffs cite are inapposite. At best, they merely confirm that the court can order production of documents when the agency, having failed to

---

[5] Nor does defendant contest that it did not avail itself of the statutory ten-day extension when "unusual circumstances" are present. ***See*** 5 U.S.C. § 552(a)(6)(B)(i). Although plaintiffs repeatedly allude to this fact and suggest that it somehow vitiates defendant's ability to invoke the "exceptional circumstances" exception of ***Open America*** once the matter has ripened into litigation, they offer no authority, and I have found none, to support that proposition.

respond to the FOIA request at the time of the court's ruling, further fails to sustain its burden of proof on summary judgment.  *See, e.g.*, ***St. Andrews Park, Inc. v. United States Department of Army Corps of Engineers***, 299 F.Supp.2d 1264, 1269-70 (S.D. Fla. 2003).[6]  For these reasons, defendant's motion for summary judgment as to plaintiffs' first claim for relief will be granted, and plaintiffs' motion as to that same claim will be denied.

### B.  WITHHOLDING CLAIM

Thus, the only remaining question is whether defendant's response to plaintiffs' FOIA request was adequate.  "The predominant objective of FOIA is disclosure."  ***Hale v. United States Department of Justice***, 973 F.2d 894, 898 (10th Cir. 1992), ***vacated and remanded on other grounds***, 113 S.Ct. 3029 (1993).  Nevertheless, the statute expressly exempts nine categories of government information from compelled disclosure.  5 U.S.C. § 552(b).  These exemptions "must be construed narrowly, in such a way as to provide the maximum access consonant with the overall purpose of the Act."  ***Vaughn v. Rosen***, 484 F.2d 820, 823 (D.C. Cir. 1973), ***cert. denied***, 94 S.Ct. 1564 (1974).

The burden is on defendant to justify its decision to withhold or redact documents.  ***Johnson v. United States Department of Justice***, 739 F.2d 1514, 1516

---

[6] When the plaintiff alleges that the agency has engaged in a pattern or practice of withholding documents in response to FOIA requests, belated production will not moot the plaintiff's claims, and the failure to comply with the statutory deadlines, in and of itself, may constitute a violation of FOIA.  ***See Nulankeyutmonen Nkihtaqmikon v. Bureau of Indian Affairs***, 493 F.Supp.2d 91, 114 (D. Me. 2007); ***Gilmore v. United States Dept. of Energy***, 33 F.Supp.2d 1184, 1188-89 (N.D. Cal. 1998).  Because plaintiffs here do not assert an ongoing pattern or practice of tardy compliance, this exception is inapposite.

(10th Cir. 1984); *Lacefield v. United States*, 1993 WL 268392 at *2 (D. Colo. March 10, 1993). To meet this burden, defendant may not rely on conclusory assertions but "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." *Lacefield*, 1993 WL 268392 at *2 (quoting *Perry*, 684 F.2d at 126). It may do so by providing affidavits or declarations that specify "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Badalamenti v. United States Department of State*, 899 F.Supp. 542, 546 (D. Kan. 1995). Such affidavits are afforded a presumption of good faith, absent concrete evidence to the contrary. *See SafeCard Services, Inc. v. Securities & Exchange Commission*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *Board of County Commissioners of Kane County v. Department of the Interior of the U.S.*, 2007 WL 2156613 at *6 (D. Utah July 26, 2007).

My review of defendant's decision to withhold or redact documents is de novo. *See* 5 U.S.C. § 552(a)(4)(B); *see also Anderson v. Department of Health and Human Services*, 907 F.2d 936, 941 (10th Cir. 1990). "The district court must determine whether all of the requested materials fall within an exemption to the FOIA and may not simply conclude that an entire file or body of information is protected without consideration of the component parts." *Anderson*, 907 F.2d at 941.

### 1.  REASONABLENESS OF DEFENDANT'S SEARCH

As an initial matter, a FOIA defendant must show that its search for documents was reasonable.  *See Patterson v. Internal Revenue Service*, 56 F.3d 832, 841 (7th Cir. 1995) (agency must prove "that [it] might have discovered a responsive document had the agency conducted a reasonable search") (citation and internal quotation marks omitted).  Reasonableness does not require defendant to search every record system or to demonstrate that no other potentially responsive documents might exist to demonstrate reasonableness, but it must show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *See Oglesby v. United States Department of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

The declaration of defendant's FOIA Officer, Sheila G. Dillard, more than adequately demonstrates that defendant's document search was reasonable.  (*See* Second Declaration of Sheila G. Dillard and Vaughn Index ¶¶ 4-5 at 2-3 [#47], filed September 18, 2007.)  Although plaintiffs maintain that defendant impermissibly searched only its active files, this misstates the evidence.  The Dillard declaration establishes without question that both active and inactive computer files were searched initially.  (*See id*. ¶ 4 at 2.)  From that more global search, it was determined that all 38 lease files contained potentially responsive documents. (*See* **Defendant's Motion Pursuant to Fed.R.Civ.P. 59(e)**, App., Exh. 1 (Third Declaration of Sheila G. Dillard ¶ 3 at 2) [#66], filed April 4, 2008.).  Plaintiffs do not assert any other alleged inadequacies

in the search process, and I perceive none.

I, therefore, find and conclude that defendant's search for records was reasonable.

## 2. SUFFICIENCY OF *VAUGHN* INDEX AND DECLARATIONS

To substantiate its decision to withhold the allegedly exempt documents, defendant has submitted, *inter alia*, a so-called ***Vaughn*** index,[7] as well as the declarations of Dillard and the principals of the two operators whose records were implicated by plaintiffs' FOIA request. Plaintiffs maintain that the Dillard declaration is inadmissible hearsay, and that the ***Vaughn*** index itself is insufficient to satisfy defendant's burden of proof on summary judgment.

In seeking to satisfy its burden of proof as to a claimed FOIA exemption, defendant may rely on affidavits or declarations of its agents. ***See Bowen v. United States Food and Drug Administration***, 925 F.2d 1225, 1227 (9th Cir. 1991). The declarations must offer more than mere conclusory or categorical assertions. ***See PHE, Inc. v. Department of Justice***, 983 F.2d 248, 250 (D.C. Cir. 1993) ("[A]n affidavit that contains merely a 'categorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.'") (quoting ***King v. United States***, 830 F.2d 210, 217 (D.C. Cir. 1987)). By the same token, the agency need not "specify its objections [to disclosure] in such detail as to compromise

---

[7] So named for the District of Columbia Circuit's seminal decision in ***Vaughn v. Rosen***, 484 F.2d 820 (D.C. Cir. 1973), ***cert. denied***, 94 S.Ct. 1564 (1974), which first suggested the necessity of such an index. ***See Anderson***, 970 F.2d at 940 n.3 (***Vaughn*** index is "a compilation prepared by the government agency . . . listing each of the withheld documents and explaining the asserted reason for its nondisclosure").

the secrecy of the information. If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." ***Bowen***, 925 F.2d at 1227 (citations and internal quotation marks omitted).

Plaintiffs claim that the entirety of the Dillard declaration is inadmissible hearsay because Dillard, "a FOIA processor located in Washington, D.C. – lacks direct knowledge regarding the activities of the DOE contractors and DOE personnel located in Western Colorado." (Plf. Resp. to Def. Motion ¶¶ 5-7 at 14.) Aside from the fact that lack of personal knowledge is not technically a hearsay objection,[8] the declaration does not, in fact, constitute hearsay. ***See*** **FED.R.EVID.** 801(c) (defining hearsay as " a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). The Dillard declaration describes what types of documents were withheld from each lease file found to contain responsive documents and the general nature of the information contained therein.[9] It does not purport to introduce any statements from the withheld documents for the truth of the matters asserted.[10] I, therefore, find it entirely appropriate to rely on the

---

[8] Lack of personal knowledge is properly raised under Fed.R.Evid. 602. Such an objection is not well taken, however, as Dillard's declaration more than adequately establishes the basis for her knowledge of the matters set forth therein. (***See*** Dillard Decl. ¶ 1 at 1 (attesting that Dillard "oversaw the document production, review, redaction, and copying in this case" and has "continuing responsibility for this matter"); ***id*** ¶ 2 at 1 ("I make this declaration based upon my personal knowledge and review of official government files, records and documents.")).

[9] At one point, the declaration does aver that the representatives of the affected operators "requested that DOE withhold from public disclosure this information as disclosure of this information would cause competitive harm to the Operator." (Dillard Decl. ¶ 18(a)(i), at 8.) To the extent this much of the declaration constitutes hearsay, it is substantiated by the declarations of the operators themselves.

[10] Had it done so, one suspects the instant motions would not have been necessary.

information included therein.

With respect to defendant's *Vaughn* index, I do not find it impermissibly vague, conclusory, or categorical.[11] Nor do the declarations merely parrot the language of the statute. *See Public Employees for Environmental Responsibility (Peer), Rocky Mountain Chapter v. United States Environmental Protection Agency*, 978 F.Supp. 955, 96 (D. Colo. 1997). Read together, defendant's *Vaughn* index and concomitant declarations identify specifically each document withheld, state specifically the statutory exemption claimed, and explain specifically how disclosure would damage the interests protected by the claimed exemption. *See Citizens Commission on Human Rights v. Food and Drug Administration*, 45 F.3d 1325, 1326 n.1 (9th Cir. 1995); *see also Public Employees for Environmental Responsibility (Peer)*, 978 F.Supp. at 961 (evidence must "demonstrate a logical basis for the defendant's claim that the harms against which the statutory exemptions seek to protect will likely occur"). In short, defendant's materials are "reasonably clear, specific, and detailed" to permit appropriate review of its withholding decision. *Public Employees for Environmental Responsibility (Peer)*, 978 F.Supp. at 960.

### 3. EXEMPTION 4

Exemption 4 of FOIA allows an agency to withhold documents that represent "commercial or financial information obtained from a person and privileged or

---

[11] Plaintiffs complain that the transmittal letter appended to defendant's FOIA documents did not comply with *Vaughn*. They fail to cite any authority compelling this level of detail in the transmittal letter. The DOE's regulations, by contrast, require only a "brief explanation of how the exemption applies to the record withheld[.]" 10 C.F.R. § 1004.7(b)(1). Assuming *arguendo* that violation of the regulation constitutes a violation of FOIA, which it does not, defendant's four-page transmittal letter more than adequately met the requirements of the regulation. (*See* Plf. Motion App., Exh. 2.)

confidential." 5 U.S.C. § 552(b)(4). "[F]or Exemption 4 to apply the information must be '(a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential.'" **Anderson**, 907 F.2d at 944 (quoting **National Parks and Conservation Association v. Morton**, 498 F.2d 765, 766 (D.C. Cir.1974)). Plaintiffs claim that defendant has "fail[ed] to provide any evidence that any person who elects to lease federal lands for uranium production ha[s] a legitimate claim to an expectation of confidentiality" and that its "generalized allegations of 'substantial competitive harm'" are insufficient to meet its burden on summary judgment. (Plf. Resp. to Def. Motion at 16.)[12]

Information is considered confidential "if disclosure of the information is likely '(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" **Id.** at 946 (quoting **National Parks**, 498 F.2d at 770) (footnote omitted); **see also Burke Energy Corp. v. Department of Energy for United States of America**, 583 F.Supp. 507, 511 (D. Kan. 1984) (noting that "other courts have held that the test for whether information is 'confidential' is whether the information is of the type that would not customarily be released to the public by the person from whom it was obtained"). In determining whether substantial competitive injury has been shown, "'the court need not conduct a sophisticated economic analysis as to the likely

---

[12] In their motion for summary judgment, plaintiffs also challenge defendant's evidence on the other two elements. However, there is little doubt but that the declarations sufficiently establish the commercial nature of the documents. **See Merit Energy Co. v. United States Dept. of Interior**, 180 F.Supp.2d 1184, 1188 (D. Colo. 2001) ("[C]haracterizing information as "commercial" or "financial" does not require the invocation of a shibboleth – the words should be given their ordinary meanings."). Moreover, plaintiffs' argument that defendant has failed to identify the source of the documents withheld under exemption 4, thereby failing to establish that they were obtained from a "person," **see** 5 U.S.C. § 551(2) ("person" under FOIA "includes an individual, partnership, corporation, association, or public or private organization other than an agency"), is plainly belied by the **Vaughn** index.

12

effects of disclosure.'" ***Utah v. United States Department of Interior***, 256 F.3d 967, 970 (10th Cir. 2001) (quoting ***Public Citizen Health Research Group v. Food & Drug Administration***, 704 F.2d 1280, 1291 (D.C. Cir. 1983)). Moreover, it is not necessary for defendant to show actual economic harm. Specific, nonconclusory evidence of potential harm is sufficient to carry the burden of proof on this issue. ***Id.***

I have little trouble in concluding that both aspects of confidentiality have been shown on the record here. The documents at issue encompass exploration and mining plans, quarterly reports, reclamation bonds, royalty checks, ore reserve data sheets, maps, archeological surveys, and royalty information contained within the leases themselves. The Dillard declaration establishes, and the operator declarations confirm, that the lease operators would not have voluntarily provided this information if defendant had not so required. I credit as plain common sense Dillard's assertion that disclosing this information would impair defendant's ability to obtain similar information in the future.[13] ***See Burke Energy Corp.***, 583 F.Supp. at 511 (citing cases holding that information such as confidential bid amounts and business sales statistics have previously been found to qualify under exemption 4). No business owner would willingly disseminate the type of sensitive information sought here if it were readily available simply for the asking.[14] To do so would potentially give competitors a potent weapon

---

[13] The fact that the leases specifically contemplate that the information required to be provided would be subject to FOIA does not support plaintiffs' conclusion that the operators thereby consented to the release of all information regardless of its confidentiality. The only reasonable reading of this contractual provision is that FOIA would apply in its entirety, including its well-recognized exemptions.

[14] Nor do plaintiffs' exhibits 3 and 8 establish that the information claimed to be exempt from disclosure is regularly available to the public pursuant to state regulatory authority. These two letters merely refer to some of the matters covered by the documents at issue; they are not the documents themselves, and, thus, prove nothing of the sort.

13

and an unfair competitive advantage in any future bidding on the subject properties.[15]

Moreover, nothing in the applicable test limits my consideration of potential harms to the leases here at issue. Some of the information claimed under this exemption – including, but not limited to, the operators' exploration and mining plans, and the quarterly reports – could allow competitors insight into the operators' business operations and strategic planning process that would detrimentally impact the operators' competitive positions in bidding on other contracts.

Thus, having reviewed the *Vaughn* index and declarations, I find and conclude that defendant has sustained its burden of proof as to those documents withheld pursuant to exemption 4 of FOIA.

## 4. EXEMPTION 5

Pursuant to exemption 5 of FOIA, an agency is not required to divulge "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). To come within this exemption, a document must (1) have its source in a government agency; and (2) "fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." ***Department of Interior v. Klamath Water Users Protective Association***, 532 U.S. 1, 8, 121 S.Ct.

---

[15] Plaintiffs also claim that competitive injury cannot be shown where the contract in question was not awarded competitively. The case to which they cite, however, **Hercules, Inc. v. Marsh**, 839 F.2d 1027 (4th Cir. 1989), is inapposite. Unlike **Hercules, Inc.**, there is no question but that the leases here were originally put out to competitive bid. Moreover, although the leases at issue have been renewed for at least the past two subsequent years (there is no record evidence as to whether they were renewed in January, 2008), there is no guarantee that they will continue to be renewed indefinitely or awarded on an other than year-to-year basis in the future. Given those circumstances, the operators' assertions of potential competitive injury are well-founded.

14

1060,1065, 149 L.Ed.2d 87 (2001).  Defendant argues that the documents claimed under this exemption qualify for intra-agency status because they were communications between DOE and contractors hired by it to manage the Uranium Leasing Program and that the documents are protected from disclosure by the deliberative process privilege.

The first issue is whether the documents can be said to have had their source in the DOE.  The Supreme Court has recognized that, despite the arguably restrictive language of FOIA,

> It is textually possible and . . . in accord with the purpose of the provision, to regard as an intra-agency memorandum one that has been received by an agency, to assist it in the performance of its own functions, from a person acting in a governmentally conferred capacity other than on behalf of another agency – e.g., in a capacity as employee or consultant to the agency, or as employee or officer of another governmental unit (not an agency) that is authorized or required to provide advice to the agency.

*Id.*, 121 S.Ct. at 1066 (quoting **United States Department of Justice v. Julian**, 486 U.S. 1, 18 n.1, 108 S.Ct. 1606, 1616 n.1, 100 L.Ed.2d 1 (1988) (Scalia, J., dissenting)). The appellate courts have taken the view that exemption 5 may be extended to agency communications with outside consultants when "the records submitted by outside consultants played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done" and when the outsider "does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it."  *Id.* at 1067.

In contesting defendant's reliance on this exemption, plaintiffs appear to believe, albeit mistakenly, that defendant is asserting the deliberative process privilege as to

15

communications with the operators of the leases.  (*See* Plf. Motion ¶¶ 3-4 at 19.)

Instead, defendant's exemption 5 claims are invoked as to communications between

DOE and three private contractors hired to assist the agency in managing the Uranium

Leasing Program.  As shown by the Dillard declaration, the contractors took direction

from and their activities were dictated by the DOE.  Broadly stated, their responsibilities

were to review and make recommendations to defendant on activities related to the

program.  They had no authority to act independently of DOE's instructions.  (Dillard

Decl. ¶ 18(b)(i) at 20.)  Defendant, thus, has established the intra-agency nature of the

communications.

The second element of the test for application of exemption 5 concerns whether

a proper claim of privilege has been made.  The deliberative process privilege, on which

defendant here relies,

> rests on the obvious realization that officials will not
> communicate candidly among themselves if each remark is
> a potential item of discovery and front page news, and its
> object is to enhance the quality of agency decisions, by
> protecting open and frank discussion among those who
> make them within the Government[.]

**Klamath Water Users Protective Association**, 121 S.Ct. at 1065-66 (citations and

internal quotation marks omitted).  To qualify for this privilege, "a document must be

*both* (1) 'predecisional' or 'antecedent to the adoption of agency policy' *and* (2)

'deliberative,' meaning 'it must actually be related to the process by which policies are

formulated.'"  **National Wildlife Federation v. United States Forest Service**, 861 F.2d

1114, 1117 (9th Cir. 1988) (quoting **Jordan v. United States Department of Justice**,

591 F.2d 753, 774 (D.C. Cir. 1978)) (emphases in original).

Defendant has met its summary judgment burden to demonstrate that the documents withheld or redacted under exemption 5 qualify for the deliberative process privilege. The *Vaughn* index states with particularity the authors and recipients of each document as to which exemption is claimed, and gives sufficient detail about the nature of the document to ascertain that it concerns the leases at issue. ***See Defenders of Wildlife v. United States Department of Agriculture***, 311 F.Supp.2d 44, 59 (D.D.C. 2004). The Dillard declaration describes in appropriate detail the types of matters as to which the withheld documents relate. The documents represent the contractors' findings and recommendations regarding management of the subject leases.

There can be little question that documents of this nature are subject to the deliberative process privilege. ***See Klamath Water Users Protective Association***, 121 S.Ct. at 1065-66 (privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated") (citation and internal quotation marks omitted). With respect to many of the documents claimed under this exemption, defendant has merely redacted the contractor's specific recommendation. Moreover, and contrary to plaintiffs' argument, it is not necessary for defendant to identify the specific decision implicated by the recommendation:

> Our emphasis on the need to protect pre-decisional
> documents does not mean that the existence of the privilege
> turns on the ability of an agency to identify a specific
> decision in connection with which a memorandum is
> prepared. Agencies are, and properly should be, engaged in
> a continuing process of examining their policies; this process
> will generate memoranda containing recommendations
> which do not ripen into agency decisions; and the lower

17

courts should be wary of interfering with this process.

***National Labor Relations Board v. Sears, Roebuck & Co.***, 421 U.S. 132, 151 n.18, 95 S.Ct. 1504, 1517 n.18, 44 L.Ed.2d 29 (1975). It is clear from the description provided in the ***Vaughn*** index and the narrative of the Dillard declaration that the documents claimed to fall under this exemption were, in fact, appropriately withheld.

## IV. CONCLUSION

Plaintiffs' claim regarding defendant's delay in responding to their FOIA request has been mooted by defendant's eventual, albeit belated, response. With respect to the documents withheld or redacted, defendant has met its burden of proof to show that the information withheld is exempt from disclosure pursuant to FOIA exemptions 4 and 5. Accordingly, defendant's motion for summary judgment will be granted, and plaintiff's denied.

**THEREFORE, IT IS ORDERED** as follows;

1. That **Plaintiffs' Motion and Brief in Support of Summary Judgment on All Claims Under the Freedom of Information Act (Oral Argument Requested)** [#42], filed August 22, 2007, is **DENIED**;

2. That **Defendant's Motion for Summary Judgment on Plaintiffs' Claims** [#45], filed September 18, 2007, is **GRANTED**;

3. That **Plaintiffs' Motion To Take Judicial Notice of Defendant's January 2008 Uranium Leases Audit Report** [#61], filed February 12, 2008, is **DENIED**;

4. That plaintiffs' First Claim for Relief, alleging violation of the timeliness requirements of FOIA, is **DISMISSED AS MOOT**;

5.  That plaintiffs' Second Claim for Relief, alleging improper withholding of information in violation of FOIA, is **DISMISSED WITH PREJUDICE**;

6.  That judgment **SHALL ENTER** for defendant, United States Department of Energy, against plaintiffs, Information Network for Responsible Mining ("INFORM") and Colorado Environmental Coalition ("CEC"), on all claims for relief and causes of action; and

7.  That defendant is **AWARDED** its costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated April 30, 2008, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**